**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LAON DEANGELO JOHNSON,

                Plaintiff,

                              Case No. 3:12-cv-17-J-JRK

vs.

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

                Defendant.
_____/

## OPINION AND ORDER[2]

### I. Status

Laon Deangelo Johnson ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claims for supplemental security income ("SSI") and disability insurance benefits ("DIB"). His alleged inability to work is due to back problems. Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed March 8, 2012, at 130, 132. On July 17, 2007, Plaintiff filed applications for SSI and DIB, alleging an onset date of September 11, 2006. Tr. at 320-24, 327-28. Plaintiff's applications were denied initially, see Tr. at 169-70 (SSI), 173-74 (DIB), and were denied upon reconsideration, see Tr. at 176-77 (DIB), 178-79 (SSI).

---

      1      Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

      2      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed March 8, 2012; Reference Order (Doc. No. 14), entered March 15, 2012.

On April 30, 2009, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified. Tr. at 74-128. At the time of the hearing, Plaintiff was forty-six (46) years old. Tr. at 87. The ALJ issued a Decision on September 14, 2009, finding Plaintiff not disabled through the date of the Decision. Tr. at 140-48. The Appeals Council, on January 11, 2011, remanded the case to the ALJ for further consideration.[3] Tr. at 154-56.

On March 3, 2011, a second hearing was held before the same ALJ, at which Plaintiff and a different VE testified. Tr. at 25-73. At the time of the second hearing, Plaintiff was forty-seven (47) years old. Tr. at 87 (indicating Plaintiff's date of birth). On April 22, 2011, the ALJ issued an unfavorable Decision, finding Plaintiff not disabled through the date of the Decision. Tr. at 10-24. The Appeals Council then denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's second written Decision the final decision of the Commissioner. On January 5, 2012, Plaintiff commenced this action under 42 U.S.C. § 405(g) and § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal. See Plaintiff's Brief (Doc. No. 16; "Pl.'s Br."), filed May 8, 2012. First, Plaintiff contends that the ALJ erred by not articulating the weight assigned to the opinion of Richard Nay, Ph.D. ("Dr. Nay"), a licensed psychologist. Pl.'s Br. at 1 (emphasis omitted). Within the first issue, Plaintiff argues that the ALJ erred by finding

---

[3] On October 26, 2009, Plaintiff filed a second application for DIB and on October 28, 2009, he filed a second application for SSI. Tr. at 359-60, 363-65. In the Remand Order of the Appeals Council, the ALJ was directed to "associate the claim files and issue a new decision on the associated claims." Tr. at 156. Although the Remand Order of the Appeals Councils states that Plaintiff's second applications were filed on September 30, 2009, the discrepancy between the dates on that order and Plaintiff's applications is of no consequence.

that Plaintiff "has a limited education," rather than finding Plaintiff is illiterate in accordance with Dr. Nay's opinion and Plaintiff's testimony. Id.; see also id. at 12-15.  Second, Plaintiff argues that "[t]he Commissioner erred in failing to find that [Plaintiff's] conditions meet or equal the requirements of Listing 12.05C." Id. at 1 (emphasis omitted).  Responding, Defendant argues that even though the "ALJ did not explicitly explain how much weight she was giving to Dr. Nay's opinion" or "explicitly discuss Dr. Nay's opinion that Plaintiff was illiterate," the ALJ's Decision is still supported by substantial evidence.  Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem."), filed July 2, 2012, at 10.  Defendant also argues that the ALJ properly considered the evidence and found "Plaintiff's impairments did not meet or equal Listing 12.05." Def.'s Mem. at 4 (capitalization omitted).  After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be reversed and remanded for the reasons explained herein.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 12-23. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since September 11, 2006, the alleged onset date." Tr. at 12 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease and borderline intellectual functioning." Tr. at 12 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 13 (emphasis and citations omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform less than sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). [Plaintiff] is capable of: occasionally lifting/carrying ten pounds; frequently lifting/carrying five pounds; standing or walking two hours of an eight hour workday; and sitting six hours of an eight hour workday. [Plaintiff] cannot work around heights. He requires the use of a cane to ambulate in and out of the job. [Plaintiff] is limited to occasionally balancing, stooping, kneeling, crouching, and crawling. [Plaintiff] cannot work around dangerous machinery. [Plaintiff] requires work with simple 1-2 step commands. [Plaintiff] should be trained, meaning not reading from a manual. [Plaintiff's] GED level is limited to one.

Tr. at 15 (emphasis omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "construction worker II." Tr. at 21 (emphasis and citation omitted). At step five, after "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC]," the ALJ determined that "there are jobs that exist in significant numbers in the

national economy that [Plaintiff] can perform," including "Carding Machine Operator"; "Label Pinker"; and "Assembler." Tr. at 22 (emphasis and citation omitted).  The ALJ concluded that Plaintiff "has not been under a disability . . . from September 11, 2006, through the date of th[e D]ecision." Tr. at 23 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted above, Plaintiff raises two issues on appeal.   Each is addressed in turn.

### A. Issue One

First, Plaintiff contends that "[t]he ALJ's failure to explain why she was not crediting Dr. Nay's mental expert opinion constitutes reversible error." Pl.'s Br. at 10.  As part of this issue, Plaintiff asserts that the ALJ erred by finding, contrary to Dr. Nay's opinion and Plaintiff's testimony, "that [Plaintiff] has a limited education." Id.; see also id. at 12-15. Defendant responds by arguing that the failure of the ALJ to "explicitly explain how much weight she was giving to Dr. Nay's opinion . . . does not amount to reversible error." Def.'s Mem. at 10.   Defendant reasons that because the ALJ addressed the ultimate issue of Plaintiff's literacy, the ALJ did not err by not "explicitly discuss[ing] Dr. Nay's opinion." Id.  To appropriately address this issue, the undersigned first summarizes Dr. Nay's opinion, outlines the legal framework, and then analyzes the issue.

#### 1. Dr. Nay's Opinion

Dr. Nay conducted an examination of Plaintiff on February 17, 2011.  Tr. at 877-78. As part of the examination, Dr. Nay administered a WRAT-3 test that measured Plaintiff's ability in reading, spelling, and arithmetic.  Tr. at 877-78.  Plaintiff received the following scores (represented in grade levels): Reading - grade 3; Spelling - grade 2; Arithmetic - grade 2.  Tr. at 877-78.   According to Dr. Nay, Plaintiff's scores fell "into the 'Deficient' range of achievement functioning, the lowest categorization available for this test."  Tr. at 878.   In relevant part, Dr. Nay concluded that Plaintiff "is clearly illiterate."  Tr. at 878.

Dr. Nay performed a second evaluation on March 7, 2011. Tr. at 890-91. Dr. Nay administered a Wechsler Adult Intelligence Scale-Third Edition (WAIS-III) examination, which is "a standard measure of intellectual functioning." Tr. at 890. Plaintiff "received a Full scale IQ of 66." Tr. at 890. That score "places [Plaintiff] in the range of intellectual functioning consistent with Mild Mental Retardation." Tr. at 890. The full scale score "was comprised of a Verbal IQ of 66 (Mild Mental Retardation) and a Performance IQ of 73 (Borderline range)." Tr. at 890.

### 2. Legal Framework

When analyzing medical opinions,[5] "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Lawton v. Comm'r of Soc. Sec., 431 F. App'x 830, 834 (11th Cir. 2011) (unpublished) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)). Failure to do so cannot be saved by "[a] statement that the ALJ carefully considered all the testimony and exhibits." Id. (citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir.1981)). When an ALJ does not describe the weight assigned to medical opinions, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Cowart, 662 F.2d at 735. It is not up to a reviewing court to scour the record to find support for an ALJ's decision; rather, the ALJ must support his or her decision within. See Owens

---

[5] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

-7-

v. Heckler, 748 F.2d 1511, 1516 (11th Cir.1984) (declining "to affirm simply because some rationale might have supported the ALJ's conclusion").

### 3. Analysis

In the ALJ's Decision, the ALJ partially summarized Dr. Nay's opinion. See Tr. at 20. The ALJ did not include in her summary Dr. Nay's conclusion that Plaintiff is "clearly illiterate." The ALJ also failed to indicate the weight assigned to Dr. Nay's opinion. The failure of the ALJ to completely summarize Dr. Nay's opinion and her failure to detail the weight assigned frustrates judicial review. See Cowart, 662 F.2d at 735. Because the undersigned cannot determine whether the ALJ considered the entirety of Dr. Nay's opinion or what weight the ALJ assigned to Dr. Nay's opinion, this matter is due to be remanded. On remand, the ALJ shall reconsider the entirety of Dr. Nay's opinion, assign the appropriate weight, and explain the reasoning for doing so. If, after reconsidering Dr. Nay's opinion, the ALJ deems it appropriate, the ALJ should also reconsider her finding that Plaintiff is educated on a limited level rather than finding Plaintiff illiterate.[6]

### B. Issue Two

Plaintiff claims that the ALJ erred by finding that Plaintiff does not meet Listing 12.05C (the Listing dealing with Mental Retardation). Pl.'s Br. at 15-19. Specifically, Plaintiff contends that contrary to the ALJ's finding, Plaintiff "suffers from deficits in adaptive

---

6    The undersigned notes that the ALJ's summary of Plaintiff's testimony at the second hearing regarding his ability to read is somewhat inaccurate. The ALJ noted that Plaintiff "testified that he reads the obituaries in the newspaper. . . . [Plaintiff] is able to understand and follow Judge Mathis [on television]." Tr. at 19. Plaintiff's testimony, however, was that he cannot read "big names" in the obituaries, but he recognizes names like "Sam" or "Fred," and he cannot "read on to see where the funeral's going to be or [a]nything like that." Tr. at 32. Plaintiff also testified that he is able to understand "some things" on Judge Mathis's television show. Tr. at 34.

functioning as an adult." Id. at 18. Defendant counters that the ALJ properly found that "Plaintiff did not have deficits of adaptive functioning that w[ere] consistent with mental retardation." Def.'s Mem. at 5.

### 1. Legal Framework

Listing 12.05 describes the condition of Mental Retardation and the requirements at issue:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. This listing has been interpreted as requiring three elements–"a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997); see Jordan v. Comm'r of Soc. Sec. Admin., 470 F. App'x 766, 766 (11th Cir. 2012) (unpublished) (stating that "a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well as satisfying one of the additional criteria"). Here, the issue focuses on whether Plaintiff has deficits in adaptive functioning.

### 2. ALJ's Decision

The ALJ found as follows:

> In terms of the requirements in paragraph C [of Listing 12.05], they are not met because [Plaintiff] does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Although [Plaintiff] had a verbal IQ score of 66, full scale IQ score of 66, and performance IQ score of 73, he does not have deficits of adaptive functioning consistent with mental retardation.

Tr. at 13. To support these findings, the ALJ relied on Plaintiff's "work history" and concluded that Plaintiff's "work history supports a conclusion that his adaptive functioning is at or above borderline IQ levels." Tr. at 13. The ALJ also stated that Plaintiff "was able to earn well above substantial gainful activity levels for many years," and Plaintiff "was able to learn the skills to perform these jobs." Tr. at 13. The ALJ recognized that Plaintiff "testified at the hearing that he was able to learn how to be a pipefitter on the job as well as a welder." Tr. at 13. She further found that Plaintiff "did not have problems traveling to different locations" when he was working as "a pipefitter" and "welder." Tr. at 13. The ALJ observed that Plaintiff "did not testify that he had mental difficulties performing this work or was ever fired from a job for being unable to perform work." Tr. at 13.

### 3. Analysis

There are two problems with the ALJ's Decision regarding Listing 12.05C: the first is with the ALJ's actual findings, and the second is with the ALJ's reasoning in support of those findings. As to the actual findings, it is not entirely clear whether the ALJ based her determination that Plaintiff does not meet Listing 12.05C on 1) a lack of a physical or other mental impairment imposing an additional significant work-related limitation of function; or

2) a lack of deficits in adaptive functioning; or 3) both. Given the ALJ's step two finding that Plaintiff suffers from the severe impairment of "degenerative disc disease" and the ALJ's statement that Plaintiff does have an IQ score meeting the Listing, one could assume that the ALJ based her determination on a lack of deficits in adaptive functioning only. The ALJ's findings outlined above, however, are inherently contradictory and unclear. In one sentence, the ALJ finds Plaintiff does not have an IQ score meeting the Listing, but in the very next sentence, the ALJ finds the exact opposite. The undersigned cannot definitively determine what findings in relation to Listing 12.05 the ALJ actually made.

As to the ALJ's reasoning, the reasoning is unclear and somewhat flawed. Plaintiff's past relevant work, classified as "construction worker II," Tr. at 21, is considered "unskilled," Tr. at 55. And, contrary to the ALJ's statement that Plaintiff worked as a "welder," Plaintiff testified that he did not weld pipes; rather, he "did a little bit of welding, [and he] used to make racks for the loops for the magazines. . . . [He] used to tack weld those a long time ago." Tr. at 37. Mainly, however, Plaintiff worked "with a shovel." Tr. at 37.

The ALJ's findings and reasoning relating to Listing 12.05C frustrate judicial review. Given the infirmities in the findings and reasoning, coupled with the fact that this case is due to be reversed and remanded for other reasons, the undersigned finds it appropriate to include in the remand instructions that the ALJ reconsider the evidence relating to Listing 12.05C.

## V. Conclusion

Upon review, the undersigned finds that this matter is due to be reversed and remanded. The ALJ's failure to specify the weight assigned to Dr. Nay's opinions frustrates

judicial review.  Additionally, the ALJ's findings and reasoning regarding whether Plaintiff meets Listing 12.05C are unclear and contradictory–further frustrating judicial review.

After due consideration, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

 (A) Reevaluate the medical opinion of Dr. Nay, state with particularity the weight afforded, and the reasons therefor;

 (B) If appropriate, reconsider the finding that Plaintiff is educated on a limited level rather than being found illiterate;

 (C) Reconsider the evidence relating to whether Plaintiff meets Listing 12.05C; and

 (D) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) or § 1383(d)(2) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 21, 2013.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

jlk
Copies to:
Counsel of Record

-13-